# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-377 |
| LESTER FULTON SMITH | : | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The government, by and through its attorneys, Jennifer Arbittier Williams, Acting United States Attorney, and Vineet Gauri and Christine E. Sykes, Assistant United States Attorneys, hereby submits this Motion for Pretrial Detention (initially ordered by United States Magistrate Judge Marianne B. Bowler, in the District of Massachusetts, on June 3, 2021), in response to the defendant's July 22, 2021 oral motion for pretrial release, and to assist the Court in preparation for the detention hearing scheduled for July 28, 2021.

The defendant has been charged by superseding indictment with felony violations of 18 U.S.C. §§ 844(f)(1) and (f)(2), 844(i), 231(a)(3), and 2. Pursuant to 18 U.S.C. § 3142(e)(3)(C), the charges under Sections 844(f)(2) and 844(i) carry a rebuttable presumption of detention. Indeed, the defendant has shown through his own actions that he poses a substantial risk to the community. He is charged with intentionally setting fire to a Pennsylvania State Police ("PSP") vehicle on May 30, 2020. A combination of photographs and video footage shows him standing on a marked PSP SUV; yielding a skateboard and repeatedly hitting the side, and shattering a window of, the SUV; and ultimately throwing a lit road flare into the vehicle. When the defendant decided to set fire to this vehicle, he risked the lives of numerous individuals who were in the vicinity of these vehicles. He destroyed a police vehicle that PSP had stationed to

prevent protestors from gaining access to I-676 and from endangering themselves or motorists by demonstrating on the highway. On May 27, 2021, following his arrest and his signed waiver of his *Miranda* rights, the defendant, in a recorded statement, admitted that he was the individual depicted in various photographic and video images (shown below) damaging, and then throwing a lit road flare into, the PSP SUV.

If convicted of 18 U.S.C. § 844(f)(2), the defendant faces a mandatory minimum sentence of 7 years' imprisonment. The substantial penalties faced by the defendant provide a powerful incentive for him to flee.

An examination of the defendant's prior record shows that he engaged in the charged offenses while serving concurrent terms of parole and probation in two different states, clearly demonstrating his inability and/or unwillingness to conform his conduct to the requirements imposed upon him in connection with a criminal proceeding.

As there are no conditions or combination of conditions that will reasonably assure the defendant's appearance as required or the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and 3142(f)(1)(A) and (f)(2) for continued pretrial detention of the defendant.

**I.      THE FACTS**

In support of this motion, the government makes the following representations and proposed findings of fact:

   **A.      Probable Cause And The Evidence In This Case**

   1.      There is probable cause to believe that the defendant has violated 18 U.S.C. §§ 844(f)(1) and (f)(2), 844(i), 231(a)(3), and 2, as charged in the superseding indictment. Pursuant to 18 U.S.C. § 3142(e)(3)(C), the charges under Sections 844(f)(2) and 844(i) carry a

rebuttable presumption of detention. On June 3, 2021, United States Magistrate Judge Marianne B. Bowler presided over a detention hearing in the District of Massachusetts and ordered the defendant detained pending trial. The defendant has not provided any new information or changed circumstances warranting his release.

       2.       The evidence in this case is strong.

          a.       On May 30, 2020, based on a report of a large gathering of protesters, PSP troopers responded to the intersection of Broad and Vine Streets in Philadelphia at the overpass of Interstate 676 (also known as "I-676" or the "Vine Street Expressway"). I-676 is a limited-access highway which runs roughly in an east/west direction through Philadelphia. PSP placed two SUVs at an on-ramp for I-676 near Broad and Vine Streets. PSP troopers responded to this area to prevent protesters from gaining access to I-676 and from endangering themselves or others by demonstrating on the highway and impeding motorists' travel.

          b.       At approximately 3:42 p.m. ET, a group of individuals began attacking the two PSP SUVs, which were designated as PSP Units K1-7 and K1-17. Both PSP SUVs were locked and contained PSP-issued rifles and other police equipment. Individuals began hitting the PSP SUVs with various objects, including skateboards, a bike lock, and unknown projectiles, as well as kicking and striking the vehicles with closed fists. Eventually, individuals shattered the windows of both PSP SUVs and stole PSP equipment stored inside, including road flares, fire extinguishers, and "riot bags" containing additional PSP-issued equipment. After these items were stolen, an individual sprayed the rear area of K1-17, inside and out, with an unknown liquid.

          c.       PSP troopers assigned to the area reported that individuals then threw lit road flares into K1-17, igniting the fire which engulfed that SUV. One PSP trooper,

who was standing near K1-17, was hit by a lit road flare and part of his uniform caught fire. This trooper's left hand suffered burn injuries when he reached into K1-17 to retrieve a rifle in order to prevent individuals from stealing it. He was treated for his injuries on the scene by EMS.

        d.      Due to the fire damage to K1-17 and the physical damage to K1-7, both vehicles were destroyed.[1] PSP's arson investigators determined that the fire that destroyed K1-17 was incendiary in nature and started in the interior of the vehicle. In fact, K1-17 was almost completely destroyed by this fire, as pictured below:

 

        e.      From video footage posted to social media, investigators observed the defendant standing on top of K1-17, and later using a skateboard to hit the side of K1-17, ultimately breaking the rear driver-side window of the vehicle. He was observed standing next to an individual who, using a handheld nozzle, sprayed an unknown liquid, into the shattered driver-side window of the SUV. In another still photograph obtained by law enforcement, the defendant was seen throwing a lit road flare into the shattered driver-side windows of the SUV.

---

[1] PSP receives federal funding. For example, in May 2020, PSP was in receipt of federal funding from, among others, the BJA Strategies for Policing Innovation Grant, identified as grant number 2018-AR-BX-0008, for approximately $682,867.

4

f. Lawfully obtained historical cell site location information for the telephone number that the defendant admitted to being his telephone number during May 2020 also positioned him at the location of the destruction of the PSP SUV at that same time.

g. On May 27, 2021, following his arrest and his signed waiver of his *Miranda* rights, the defendant admitted in a recorded statement that he is the individual depicted in each of the screen captures and images shown below.







**B. <u>Maximum and Mandatory Minimum Penalties</u>**

The statutory maximum penalty for violation of 18 U.S.C. § 844(f)(1) and (f)(2) is a mandatory minimum of seven years' imprisonment, up to a maximum of 40 years of imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 844(i) is a mandatory minimum of five years' imprisonment, up to a maximum of 20 years of imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 231(a)(3) is five years' imprisonment. The sentencing judge may choose to order the mandatory minimum sentences to run concurrently or consecutively. Thus, the defendant faces a mandatory minimum of seven years' imprisonment, with a statutory maximum of 65 years of imprisonment. This provides strong incentive for him to flee.

**C. <u>Criminal Record</u>**

The defendant has a 2014 conviction in the Court of Common Pleas, Delaware County, Pennsylvania, for felony narcotics offenses (four counts of manufacture/delivery/possession with intent to deliver a controlled substance, and one count of criminal use of a communications facility), and a 2018 state conviction in New London, Connecticut for second degree robbery. He also has a pending charge in New London, Connecticut for misdemeanor possession of a

controlled substance, stemming from an arrest that occurred in September 2020, subsequent to the offense conduct in this case. The defendant's significant criminal history demonstrates that he poses a danger to the community and a risk of non-appearance.

### D. Failures to Abide by Court Supervision

At the time the defendant committed the offense conduct for which he now stands charged in the Eastern District of Pennsylvania, he was on active parole for his 2014 Delaware County, Pennsylvania drug conviction, and was serving a concurrent term of probation for his Connecticut robbery conviction. Yet, none of this prevented the defendant from engaging in a dangerous arson in which he put many other persons at risk of death or serious injury. This clearly demonstrates his inability and/or unwillingness to conform his conduct to the requirements imposed while under court supervision in connection with a criminal proceeding.

### E. Unstable Living Situation and Unemployment

The defendant admitted at the time of his arrest, and to Pretrial Services, that he does not have a stable living situation, but rather for the past year has resided in hotels arranged for by his employer, given the transient nature of his employment. He further advised agents at the time of his arrest that while on parole and probation, and because of his criminal history, he had been unable to use family members' addresses, even for mail, because they resided in government-subsidized Section 8 housing. Thus, the defendant has no fixed address, and as a result of his arrest in this case, he is no longer employed.

## II. CONCLUSION

The defendant committed arson by setting fire to a police vehicle on May 30, 2020. He did so despite the fact that there were numerous other individuals in the immediate vicinity who could have been injured or killed by fire or explosion. As a result of these actions, the defendant

faces a mandatory minimum sentence of seven years' incarceration. The defendant committed the arson while on state parole in Pennsylvania for a felony drug offense, and while on state probation for a robbery conviction in Connecticut. The defendant was arrested for possession of a controlled substance after the offense conduct in his EDPA case. He is no longer employed and does not have a fixed address. An examination of all of these factors makes clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its motion for continued pretrial detention should be granted and the defendant's motion for pretrial release should be denied.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney

*/s  Christine E. Sykes*
Christine E. Sykes
Vineet Gauri
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

       I hereby certify that the attached Motion for Continued Pretrial Detention and proposed Pretrial Detention Order have been served on the counsel identified below through the Electronic Case Filing (ECF) system and email:

>Glennis L. Clark, Esq.
>1101 Hamilton Street
>Allentown, PA 18101

>*/s Christine E. Sykes*
>Christine E. Sykes
>Assistant United States Attorney

Dated: July 27, 2021.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-377 |
| LESTER FULTON SMITH | : | |

### PRETRIAL DETENTION ORDER

AND NOW, this _____ day of July 2021, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for continued detention because the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, and by a preponderance of the evidence that no conditions or combination of conditions that will reasonably assure the defendant's appearance as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1. There is probable cause to believe that the defendant has violated 18 U.S.C. §§ 844(f)(1) and (f)(2), 844(i), 231(a)(3), and 2, as charged in the superseding indictment. Pursuant to 18 U.S.C. § 3142(e)(3)(C), the charges under Sections 844(f)(2) and 844(i) carry a rebuttable presumption of detention. On June 3, 2021, United States Magistrate Judge Marianne B. Bowler presided over a detention hearing in the District of Massachusetts and ordered the defendant detained pending trial.

2. The evidence in this case is strong.

a. On May 30, 2020, based on a report of a large gathering of protesters, PSP troopers responded to the intersection of Broad and Vine Streets in Philadelphia at the overpass of Interstate 676 (also known as "I-676" or the "Vine Street Expressway"). I-676 is a limited-access highway which runs roughly in an east/west direction through Philadelphia. PSP placed two SUVs at an on-ramp for I-676 near Broad and Vine Streets. PSP troopers responded to this area to prevent protestors from gaining access to I-676 and from endangering themselves or others by demonstrating on the highway and impeding motorists' travel.

b. At approximately 3:42 p.m. ET, a group of individuals began attacking the two PSP SUVs, which were designated as PSP Units K1-7 and K1-17. Both PSP SUVs were locked and contained PSP-issued rifles and other police equipment. Individuals began hitting the PSP SUVs with various objects, including skateboards, a bike lock, and unknown projectiles, as well as kicking and striking the vehicles with closed fists. Eventually, individuals shattered the windows of both PSP SUVs and stole PSP equipment stored inside, including road flares, fire extinguishers, and "riot bags" containing additional PSP-issued equipment. After these items were stolen, an individual sprayed the rear area of K1-17, inside and out, with an unknown liquid.

c. PSP troopers assigned to the area reported that individuals then threw lit road flares into K1-17, igniting the fire which engulfed that SUV. One PSP trooper, who was standing near K1-17, was hit by a lit road flare and part of his uniform caught fire. This trooper's left hand suffered burn injuries when he reached into K1-17 to retrieve a rifle in order to prevent individuals from stealing it. He was treated for his injuries on the scene by EMS.

d. Due to the fire damage to K1-17 and the physical damage to K1-7, both vehicles were destroyed.² PSP's arson investigators determined that the fire that destroyed K1-17 was incendiary in nature and started in the interior of the vehicle. PSP vehicle K1-17 was almost completely destroyed by this fire, as pictured below:

 

e. From video footage posted to social media, investigators observed the defendant standing on top of K1-17, and later using a skateboard to hit the side of K1-17, ultimately breaking the rear driver-side window of the vehicle. He was observed standing next to an individual who, using a handheld nozzle, sprayed an unknown liquid, into the shattered driver-side window of the SUV. In another still photograph obtained by law enforcement, the defendant was seen throwing a lit road flare into the shattered driver-side windows of the SUV.

f. Lawfully obtained historical cell site location information for the telephone number that the defendant admitted to being his during May 2020 also positioned him at the location of the destruction of the PSP SUV at that same time.

---

² PSP receives federal funding. For example, in May 2020, PSP was in receipt of federal funding from, among others, the BJA Strategies for Policing Innovation Grant, identified as grant number 2018-AR-BX-0008, for approximately $682,867.

g. On May 27, 2021, following his arrest and his signed waiver of his *Miranda* rights, the defendant admitted in a recorded statement that he is the individual depicted in each of the screen captures and images shown below.







3. The defendant has a 2014 conviction in the Court of Common Pleas, Delaware County, Pennsylvania, for felony narcotics offenses (four counts of manufacture/delivery/possession with intent to deliver a controlled substance, and one count of criminal use of a communications facility), and a 2018 state conviction in New London, Connecticut for second degree robbery. He also has a pending charge in New London, Connecticut for misdemeanor possession of a controlled substance, stemming from an arrest that occurred in September 2020, subsequent to the offense conduct in this case.

4. At the time the defendant committed the offense conduct in this case, he was on active parole for his 2014 Delaware County, Pennsylvania drug conviction, and was serving a concurrent term of probation for his Connecticut robbery conviction.

5. The statutory maximum penalty for violation of 18 U.S.C. § 844(f)(1) and (f)(2) is a mandatory minimum of seven years' imprisonment, up to a maximum of 40 years of imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 844(i) is a mandatory minimum of five years' imprisonment, up to a maximum of 20 years of imprisonment. The statutory maximum penalty for violation of 18 U.S.C. § 231(a)(3) is five years' imprisonment. The sentencing judge may choose to order the mandatory minimum

sentences to run concurrently or consecutively. Thus, the defendant faces a mandatory minimum of seven years' imprisonment, with a statutory maximum of 65 years of imprisonment.

6. The defendant has no fixed address, and as a result of his arrest in this case, he is no longer employed.

7. The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE ELIZABETH T. HEY
United States Magistrate Judge