IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-00377-2 |
| LESTER FULTON SMITH | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On May 30, 2020, amidst civil disorder in Center City, Philadelphia, in the wake of the death of George Floyd, and while in the middle of a dense crowd of protestors, defendant Lester Fulton Smith threw a lit road flare into the shattered window of an unoccupied marked Pennsylvania State Police vehicle, which was eventually engulfed in flames. For the reasons provided below, the government recommends a sentence of imprisonment at the low end of the applicable guidelines range.

**I.      INTRODUCTION**

The government submits this memorandum in advance of the sentencing hearing scheduled for November 16, 2022. A grand jury returned a superseding indictment on May 25, 2021, charging defendant Smith, along with codefendant Ayoub Tabri, with one count of maliciously damaging, destroying, and attempting to do the same by fire, a vehicle owned by the Pennsylvania State Police ("PSP"), an organization receiving federal funding, in violation of 18 U.S.C. §§ 844(f)(1), (f)(2), and 2 (Count One); one count of arson affecting interstate commerce, in violation of 18 U.S.C. §§ 844(i) and 2 (Count Two); and one count of obstructing, impeding, and interfering with law enforcement officers lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, which obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in

commerce, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Three).  On July 25, 2022, defendant Smith entered a plea of guilty, pursuant to a written plea agreement between the parties, to Count Three (civil disorder) of the Superseding Indictment.  The government has agreed to move to dismiss Counts One and Two at the time of sentencing.

**II.      SENTENCING CALCULATION**

   **A.  Maximum Sentence**

Count Three (civil disorder):  five-years' imprisonment, a three-year term of supervised release, a $250,000 fine, and a $100 special assessment.  Pursuant to the plea agreement, the defendant agrees to pay mandatory restitution in the amount of $87,000.

   **B.  Sentencing Guidelines Calculation**

The Probation Office correctly calculated defendant Smith's Total Offense Level at 21 and his Criminal History Category as IV, preliminarily resulting in a Sentencing Guidelines range of 57 to 71 months' imprisonment.  Because the statutorily authorized maximum sentence of five years is less than the maximum of the guideline range, however, the applicable Sentencing Guidelines range is effectively 57 to 60 months. U.S.S.G. §5G1.1(c)(1).  The defendant did not file any objections to the Presentence Report.  The details of the calculation are as follows (PSR ¶¶ 100 -101):

| | |
|---|---|
| Base Offense Level<br>    U.S.S.G. § 2K1.4(a)(1) | 24 |
| Adjusted Offense Level | 24 |
| Acceptance of Responsibility<br>    U.S.S.G. § 3E1.1(a), (b) | - 3 |
| Total Offense Level<br>Criminal History Category IV | 21 |
| Sentencing Guideline Imprisonment Range: | 57 to 71 months |

Due to the five-year statutory maximum, pursuant to §5G1.1(c)(1):        57 to 60 months.

## III. SENTENCING ANALYSIS

A thorough consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) counsels in favor of a sentence of imprisonment at the low end of the advisory range.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    A.    **Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

On May 25, 2020, George Floyd died while in the custody of the Minneapolis, Minnesota, Police Department.  The circumstances surrounding George Floyd's death drew significant media attention.  In the days following Floyd's death, large-scale protests were held throughout the United States.  One such protest took place on Saturday, May 30, 2020, in and around Center City, Philadelphia.  PSR ¶ 12.

While initial protests in Philadelphia were peaceful, violence later erupted.  Among other things, some groups of individuals began to riot, smashing store fronts, looting stores, and attacking police vehicles, including two PSP SUVs.  That afternoon, PSP troopers responded to the intersection of Broad and Vine Streets, near an on-ramp for Interstate 676 (the "Vine Street Expressway"), based on a report of a large gathering of protesters.  The PSP troopers responded to the area to prevent protestors from gaining access to I-676 and from endangering themselves and others by demonstrating on the highway and thus impeding motorists' travel.  PSR ¶ 13.

Shortly thereafter, according to PSP troopers, other law enforcement and civilian witnesses, and video and photographic evidence, a group of individuals attacked two PSP vehicles, both marked gray Ford Explorers designated as PSP Units K1-7 and K1-17, which the troopers had parked near the intersection to control the crowds.  Individuals were seen hitting the PSP SUVs with various objects, including skateboards, a bike lock, and unknown projectiles, in addition to kicks and strikes from closed fists.  Eventually, individuals shattered the windows of both PSP SUVs and stole PSP equipment stored inside, including road flares and other police

equipment. One individual sprayed the rear area of SUV K1-17, inside and out, with a flammable liquid. PSR ¶ 14.

Video and photographic surveillance captured defendant Smith, amidst the civil disorder, standing on top of SUV K1-17, and later using a skateboard to hit the side of K1-17, ultimately breaking the rear driver-side window of the vehicle. He was observed standing next to another individual who, using a handheld nozzle, sprayed an unknown liquid, into the shattered driver-side window of the SUV. In another still photograph obtained by law enforcement, the defendant was seen throwing a lit road flare into the shattered driver-side windows of the SUV. Several other individuals were also observed throwing lit road flares into vehicle K1-17, igniting the fire which engulfed the vehicle in flames. One PSP trooper, "LF," who was standing near the vehicle at the time, was hit by a lit road flare, causing part of his uniform to catch fire and a burn to his hand. (He was treated for his injuries on the scene.) Due to the size of the crowd, fire personnel were unable to extinguish the vehicle fire, which destroyed SUV K1-17. PSR ¶¶ 15-16.

Defendant Smith, age 27, is a United States citizen. PSR ¶ 51. At the time of his arrest in this matter, the defendant reportedly resided in Philadelphia, but routinely traveled for employment with a company that contracts with utilities companies to install cable. PSR ¶¶ 58. 60, 91, 95. He was arrested while on the job in Massachusetts in June 2021 and has been in federal custody since that time. PSR ¶¶ 9, 18. Smith has a 2014 prior conviction in Pennsylvania for criminal use of a communication facility and drug manufacturing/delivery/possession with the intent to manufacture or distribute, and a 2018 conviction in Connecticut for second degree robbery. He was on concurrent state parole in these cases at the time of the charged offense conduct. PSR ¶¶ 38-42, 44. Defendant Smith also has a

history of substance abuse, including alcohol, and an apparent need for mental health treatment. PSR ¶¶ 40, 74-79, 81-85.

On May 27, 2021, at the time of his arrest in the current matter, defendant Smith waived his *Miranda* rights and admitted to law enforcement agents that he had attended the protest in Philadelphia, jumped on top of the police vehicle, and smashed a window of the vehicle with a skateboard. After being shown images of him standing on top of the police vehicle, smashing the window, and throwing a lit flare into the vehicle, Smith acknowledged that he was the individual in the images. The defendant also apologized for his actions that day. PSR ¶ 18. 18 U.S.C. § 3553(a)(1).

      **B.**    **The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Adequate Deterrence, and Protect the Public**

Obstructing, impeding, and interfering with law enforcement officers lawfully engaged in the performance of their official duties incident to and during the commission of a civil disorder, which obstructs, delays, and adversely affects commerce and the movement of any article and commodity in commerce, is a serious offense. The defendant's act of throwing a lit flare into a police vehicle that was situated in an area densely populated with both law enforcement officers and protestors no doubt created a substantial risk of death and serious bodily harm to others.

A factor in the sentencing determination is both specific and general deterrence. As the courts of appeals have held both before and after *Booker*, deterrence under 3553(a) is not limited to deterrence of the particular defendant. *See e.g. United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the

Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation").

Considering the nature and seriousness of the offense, a guidelines sentence is the best way to satisfy the objectives of § 3553(a). Such a sentence in this case will "reflect the seriousness of [the defendant's] offense . . . promote respect for the law . . . provide just punishment for the offense . . . protect the public from further crimes of the defendant . . . [and] afford adequate deterrence to [further] criminal conduct. . ." 18 U.S.C. § 3553(a)(2)(A), (B), and (C).

### C. The Need to Provide the Defendant with Educational or Vocational Training and Medical Care

There is no need in this case to adjust an otherwise appropriate sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ...." § 3553(a)(2)(D). While serving an appropriate sentence, the defendant will have the opportunity to take advantage of educational and/or vocational training, as well as counseling and treatment programs for mental health and substance abuse. Moreover, a three-year term of supervised release will also prove an efficient avenue for continued monitoring, and additional treatment, if warranted, of mental health and substance abuse issues. PSR ¶¶ 40, 64-69, 74-79, 81-85.

**D.     The Need to Avoid Unwarranted Sentencing Disparities**

The sentencing guidelines aim to achieve uniform and appropriate treatment of like crimes, represent the distillation of more than 20 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress.  All of these policy reasons support the imposition of a sentence of imprisonment within the applicable guideline range in this case.  18 U.S.C. § 3553(a)(6).

**E.     The Need to Provide Restitution**

The provisions of the Mandatory Victim Restitution Act of 1996 apply to the offense of conviction in this matter.  The Pennsylvania State Police, as an agency, and PSP Trooper LF, who sustained injuries, are considered victims.  Pursuant to the guilty plea agreement entered into between the parties, the defendant has agreed to pay restitution in the amount of $87,000.  PSR ¶¶ 20-22.  18 U.S.C. § 3553(a)(7).

**IV.    CONCLUSION**

For these reasons, the government recommends that the Court impose a sentence of imprisonment at the low end of the applicable guideline range in this case.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s/* Christine E. Sykes
CHRISTINE E. SYKES
VINEET GAURI
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Glennis L. Clark, Esq.
1101 Hamilton Street
Allentown, PA 18101


 /s Christine E. Sykes
CHRISTINE E. SYKES
Assistant United States Attorney


Date:  November 10, 2022